**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**SHEET METAL WORKERS LOCAL 98
PENSION FUND, et al.,**

                    **Plaintiffs,**                    **CASE NO. 2:06-CV-345**

     **v.**                                   **JUDGE FROST**

                                           **MAGISTRATE JUDGE KEMP**

**AIRTAB, INC., et al.,**

                    **Defendants.**

## OPINION AND ORDER

This matter came on for consideration of Defendants' Motion for Summary Judgement (Doc. # 113), Plaintiffs' Motion for Summary Judgment (Doc. # 117), and Intervenor Plaintiffs' Motion for Summary Judgment (Doc. # 121). For the reasons that follow, the Court **GRANTS** in part and **DENIES** in part Defendants' motion, Plaintiffs' motion, and Intervenor Plaintiffs' motion.

### I.  Background

On May 10, 2006 Sheet Metal Workers Local 98 Pension Fund and its trustees and Sheet Metal Workers Local 98 Welfare Fund and its trustees ("Plaintiffs" or "Plaintiff Funds") filed this action (Doc. # 2) and filed their amended complaint on June 4, 2008 (Doc. # 103). Plaintiff Funds are employee benefit plans as defined in Section 3(3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(3) and multiemployer plans as defined in Section 3(37) of ERISA, 29 U.S.C. § 1002(37). Plaintiffs C. Barry Pickett, Robert Gartner, Mark Judy, C. W. Park, Ronald Wilburn, and James T. Ziegler are the trustees of the Plaintiff Funds.

On July 31, 2006 Sheet Metal Workers Local 24 Columbus Area Retirement Savings Plan and its trustees and Sheet Metal Workers Local 24 Joint Apprenticeship and Training Fund

and its trustees ("Intervenor Plaintiffs" or "Intervenor Funds") filed their complaint (Doc. # 14) and filed their amended complaint on May 27, 2008 (Doc. # 102).  Intervenor Funds, like the Plaintiff Funds, are employee benefit plans and multiemployer plans as defined by ERISA, 29 U.S.C. §§1002(3), 1002(37).  Intervenor Plaintiffs Dennis Shuman, Doug Storts, Greg Yoak, Scott Hammond, Neil Hartfield, Paul Whitehead, Mark Funk, Tony Statton, Jim Finley, Scott Cosgrove, Mike Moore, and Jim Williams are the trustees of the Intervenor Funds.

Defendant AirTab, Inc. ("AirTab") is an Ohio corporation that is involved in the testing, adjusting, and balancing of air flow at the later stages of the building construction process.  At all relevant times, Defendant Tina Hairston-Ileogben was the sole shareholder and president of AirTab and Defendant Pius Ileogben was AirTab's coordinator responsible for bidding and estimating projects.

Sometime in 2004, Ron Choina, the manager of AirTab and a member of Sheet Metal Workers' Local Union 24 ("Local 24"), initiated discussions with Thomas Anderson, business manager of Local 24, about the possibility of AirTab re-affiliating with Local 24.  On July 22, 2004 Choina met with Anderson to discuss the re-affiliation.  On July 29, 2004 Anderson sent Choina a letter that allegedly recapped the major points agreed to during the July 22 meeting.  In the July 2004 letter, there is a section titled: "Jobs Bid Prior to 7/26/04" that states: "On all work bid prior to 7/26/04 Air Tab may complete as bid with current employees."  The parties disagree as to the meaning of this section.

On September 9, 2004 Chuck Thacker and Mark Funk, two business agents from Local 24, met Choina at AirTab and Choina signed the 2003 Collective Bargaining Agreement ("CBA") and the Letter of Assent.  Defendants aver that they did not receive a copy of the CBA

2

prior to that date.  *See* Affidavit of Ron Choina ¶ 6.[1]  Defendants argue that "Thacker and Funk arrived early in the morning shortly before Choina and AirTab's technicians were required to leave for job sites, and as such, Choina was under considerable time pressure to get all of the CBA booklets signed in a short amount of time."  (Doc. # 113 at 3 citing to the Affidavit of Ron Choina ¶¶ 6,8.)  Because of these time constraints, Defendants contend that Choina was unable to read the CBA before signing it.  Defendants assert that Thacker and Funk explained the terms of the CBA, none of which they represented to be inconsistent with the agreement that was previously reached between Anderson and Choina and memorialized in Anderson's July 29, 2004 letter.  Thus, Defendants conclude that they were required to report and pay contributions to the Plaintiff Funds and the Intervenor Funds in accordance with the July 29, 2004 letter.

However, Plaintiffs and Intervenor Plaintiffs allege that AirTab is obligated to report and pay contributions pursuant to the CBA.  That is, reporting and contributions were to be made on all jobs, regardless of when they were bid.  These Plaintiffs argue that Defendants fail to explain and to substantiate the alleged time pressures Choina was under on the morning he signed the Letter of Assent and the CBA.  Further, Plaintiffs and Intervenor Plaintiffs contend that there is no suggestion that the documents had to be executed on the morning of September 9, 2004, or that the documents were not previously available for review.  Finally, Plaintiffs and Intervenor Plaintiffs assert that the CBA that was signed by Choina was the standard, pre-printed form CBA booklet negotiated between the Sheet Metal Contractors of Central Ohio and Local 24, with the pre-printed signatures for the contractors association and the Union, concluding that there is no

---

[1]Attached to Defendants' Motion for Summary Judgement as Exhibit A.  (*See* Doc. # 113.)

basis for claiming that Choina thought he was signing a collective bargaining agreement that contained special terms for AirTab.

Defendants paid and reported to Local 24 from September 9, 2004 through May 11, 2005 only on the new jobs bid, *i.e.*, in accordance with the July letter.  On May 11, 2005 AirTab avers that a business agent from Local 24, Barry Pickett, demanded that AirTab pay an additional $8500.00 or AirTab's health insurance would be cancelled.  Choina provided some of the money because AirTab did not have that amount to pay.  From May 2005 through December 2005 AirTab continued to pay the additional contributions to "avoid the strike that was threatened by Local 24 and the financial consequences of a labor dispute."  (Doc. # 113 at 5 citing Affidavit of Ron Choina ¶ 11.)  AirTab ceased paying contributions into the fund in December 2005 because, it claims, AirTab was paid ahead through May 2006 based upon the extra amount it had already paid and its belief that it was not required to pay on projects bid prior to September 9, 2004.

Plaintiffs and Intervenor Plaintiffs agree that AirTab failed to pay contributions in December 2005 and failed to report or to pay contributions for the months of January, February, March, April, and May of 2006.  Intervenor Plaintiffs estimate that the amount in delinquent contributions owed to the Intervenor Funds is $ 6,178.00[2] and Plaintiffs estimate the amount in delinquent contributions owed to the Plaintiff Funds is $ 47,954.00.[3]

In Plaintiffs' amended complaint, they allege causes of action for delinquent contributions, breach of contract, breach of trust/conversion of contributions against AirTab, and

---

[2]This amount is alleged to be accurate as of May 27, 2008, the date that Intervenor Plaintiffs filed their amended complaint.

[3]This amount is alleged to be accurate as of June 4, 2008, the date that Plaintiffs filed their amended complaint.

causes of action against the Iloegbens for breach trust/conversion of contributions. Plaintiffs also allege that Defendants have presented conflicting reports, unsigned reports, records that conflict with the reports, and Plaintiffs have obtained a conflicting audit. Plaintiffs request the Court to order Defendants to file signed, accurate reports of all hours worked by sheetmetal workers during the months of December 2005 through May 2006, as required by the CBA.

In the Intervenor Plaintiffs' amended complaint, they allege causes of action for delinquent contributions and breach of contract against AirTab, and breach of fiduciary duty against the Ileogbens.

On August 14, 2008 AirTab and the Ileogbens filed Defendants' Motion for Summary Judgment. (Doc. # 113.) On September 8, 2008 Plaintiffs filed their memorandum in opposition (Doc. # 125) and Intervenor Plaintiffs filed their memorandum in opposition (Doc. # 126). Defendants filed their reply in support of their motion for summary judgment on September 19, 2008. (Doc. # 133.)

On August 15, 2008 Plaintiffs filed their motion for partial summary judgment (Doc. # 117), which was opposed on September 5, 2008 by AirTab (Doc. # 122), Tina Hairston-Iloegben (Doc. # 123), and Pius Ileogben (Doc. # 124). On September 16, 2008 Plaintiffs filed their reply in support of their motion for partial summary judgment. (Doc. # 127.)

On August 15, 2008 Intervenor Plaintiffs filed their motion for summary judgment (Doc. # 121), which was opposed on September 5, 2008 by AirTab (Doc. # 122), Tina Hairston-Iloegben (Doc. # 123), and Pius Ileogben (Doc. # 124). On September 16, 2008 Intervenor Plaintiffs filed their reply in support of their motion for summary judgment. (Doc. # 132.)

## II.  Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c).

In making this determination, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Id.* at 251.

## III. Analysis

### A. Delinquent Contributions

Plaintiffs and Intervenor Plaintiffs have invoked Section 515 of ERISA as the source of AirTab's duty to make contributions to the Plaintiff and Intervenor Funds. That section provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. In turn, Section 502 of ERISA authorizes the Plaintiff Funds and the

6

Intervenor Funds to bring a civil action alleging a violation of Section 515, and also specifies the remedies available to Plaintiffs should they prevail.  *See* 29 U.S.C. § 1132.

Plaintiffs and Intervenor Plaintiffs allege that they are entitled to contributions on all AirTab jobs from the time the parties entered into the CBA, September 9, 2004.  AirTab, however, argues that pursuant to the July 2004 letter it is required to pay contributions only on jobs bid after entering into the CBA.  AirTab concludes that it is not bound by the CBA because it is void *ab initio* based upon the defenses of fraud in the execution and equitable estoppel.  This Court disagrees.

**1.  AirTab is not entitled to the affirmative defense of fraud in the execution**.

"Fraud in the execution is an affirmative defense, and the defendant bears the burden of proving the defense."  *Electric Workers Local 58 Pension Trust Fund v. Gary's Elec. Serv. Co.*, 227 F.3d 646, 656 (6th Cir. 2003) (citing *Hetchkop v. Woodlawn At Grassmere, Inc.*, 116 F.3d 28, 31 (2d Cir. 1997)).  Fraud in the execution causes a party to believe that the agreement it signs has essential terms different from those that actually appear in the contract.  *See id.*  Thus, proof of fraud in the execution voids a contract.  *See id.*  " 'Fraud will not lightly be inferred and in the absence of such gross mistakes as would necessarily imply bad faith or a failure to exercise an honest judgment, [an agreement] may not be set aside . . . .' "  *Id.* at 657 (citing *NLRB v. Volney Felt Mills, Inc.*, 210 F.2d 559, 560 (6th Cir. 1954).  Fraud in the execution is a valid defense whenever there is "excusable ignorance" of the contents of the writing signed.  *Id.*

AirTab argues that *Connors v. Fawn Mining Corp.*, 30 F.3d 483, 491 (3rd Cir. 1994) is on point and asks this Court to follow its analysis.  In *Connors*, by showing that it was excusably ignorant of the terms of the collective bargaining agreement, the defendant employer

successfully asserted the defense of fraud in the execution against multiemployer ERISA plans seeking to collect contributions. AirTab explains how Choina's failure to read the Letter of Assent or the CBA was excusable. The Court, however, finds it unnecessary to look to our sister circuit to ascertain the definition of "excusable ignorance" since the Sixth Circuit has unquestionably concluded that the term is inapplicable in a situation such as the one before this Court.

Specifically, AirTab's asserted defense of fraud in the execution necessarily fails here because the Sixth Circuit has held that "to show excusable ignorance, the party asserting the defense must show that it carried its 'basic responsibility . . . to review a document before signing it.' " *Gary's Elec. Serv. Co.*, 227 F.3d at 657 (citing *Hetchkop*, 116 F.3d at 34). AirTab does not dispute that Choina failed to read the Letter of Assent or the CBA before he signed them. *See Iron Workers' Local No. 25 Pension Fund v. Allied Fence & Sec. Sys.*, 922 F. Supp. 1250, 1259 (E.D. Mich 1996) ("In order to establish a 'fraud in the execution' defense, it is not enough that Defendant was ignorant of the nature and contents of the document being signed; in addition, that ignorance must be excusable." citing *Southwest Adm'rs, Inc. v. Rozay's Transfer*, 791 F.2d 769 (9th Cir. 1986) which quoted U.C.C. § 3-305 cmt. 7); *Michigan Electrical Employees Pension Fund v. Encompass Electric & Data, Inc.*, 556 F. Supp.2d 746 (W.D. Mich. 2008) (concluding that if the defendant signed the letters of assent without seeing the collective bargaining agreements, that was a voluntary choice, and the defendant alone is to blame if the agreements impose too onerous a burden on it); Restatement (Second) of Contracts § 163 (1981) (fraud in the execution arises only where a party "neither knows nor has reasonable opportunity to know of the character or essential terms of the proposed contract"); *Resolution Trust Corp. v.*

*Wilson*, 851 F. Supp. 141, 146 n.5 (D. N.J. 1994) (a party's negligent failure to avail himself of a reasonable opportunity to review a contract before signing it precludes that party from successfully asserting a "fraud in the execution" defense).

AirTab's argument that Choina was under time pressure the morning he signed the Letter of Assent and the CBA is simply insufficient to constitute "excusable." *See Resilient Floor Decorators Ins. Fund v. Campau Floor Covering, Inc.*, No. 99-CV-72316-DT, 2000 U.S. Dist. LEXIS 8082, at *13 (rejecting defendant's excuse that she was "very busy at the time" as sufficient to establish a fraud in the execution defense). As a sister district court has explained in an analogous case that this Court finds persuasive:

> The Court recognizes the harshness of the result reached in this case. Under Defendant's unrebutted version of the circumstances surrounding its execution of the CBA, Defendant is potentially subject to liability for several years of delinquent contributions solely because its president failed to read a document before signing it.
>
> Yet, the law in this area is clear: so long as Defendant had an opportunity to review the CBA before signing it, Defendant cannot escape the obligation to make contributions pursuant to the CBA. Simply put, the failure of Defendant's president to read a 26-page document captioned "1989-1992 Iron Workers Agreement" does not constitute excusable ignorance.
>
> Moreover, the result in this case fully comports with the policy concerns that led Congress to enact § 515 of ERISA. That section was intended to shield employees from any labor-management disputes that do not substantially undermine the integrity of a duly-executed CBA. Defendant's belief that Local 25 would provide a "temporary" agreement, standing alone, cannot overcome the undisputed fact that Defendant's president signed a valid CBA after being afforded a full opportunity to examine it.

*Allied Fence & Sec. Sys.*, 922 F. Supp. at 1260.

The circumstances before *Allied Fence & Sec. Sys.* are analogous to those before this Court. Although Choina may have had some time pressures the morning he signed the CBA,

there is absolutely no evidence to support the contention that Choina was not afforded a full opportunity to examine the Letter of Assent and the CBA that day or sometime before that day, or was unable to postpone the signing to a time when there would be more time available to review the documents.

Accordingly, even when viewing the evidence in the light most favorable to AirTab, the evidence is such that a reasonable jury could not return a verdict for it on the defense of fraud in the execution.

**2. AirTab is not entitled to the affirmative defense of equitable estoppel.**

AirTab argues that Plaintiffs and Intervenor Plaintiffs should be estopped from collecting contributions on jobs that were bid prior to the execution of the CBA based upon the July 2004 letter.  With regard to the defense of equitable estoppel, the Sixth Circuit has not adopted it nor rejected it as a defense against ERISA multiemployer employee benefit plan claims for delinquent contributions.  *See Trustees of the Mich. Laborers' Health Care Fund v. Gibbons*, 209 F.3d 587, 592 (6th Cir. 2000) ("We find it unnecessary, however, to decide whether or not equitable estoppel should generally be available as a defense to contribution recovery actions, because in this case the defendants cannot establish a basis to estop recovery.")  In the instant action too, it is not necessary to decide whether or not equitable estoppel should generally be available as a defense to contribution recovery actions, because in this case AirTab cannot establish a basis to estop recovery.

The elements of a claim of equitable estoppel are:

1) conduct or language amounting to a representation of material fact; 2) awareness of the true facts by the party to be estopped; 3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the

10

> former's conduct is so intended; 4) unawareness of the true facts by the party
> asserting the estoppel; and 5) detrimental and justifiable reliance by the party
> asserting estoppel on the representation.

*Armistead*, 944 F.2d at 1298 (citing *Apponi v. Sunshine Biscuits, Inc.*, 809 F.2d 1217 (6th Cir.

1987)).  All of these elements must be present before the court may order estoppel.  *See id.*

The Court, however, concludes that there is no genuine issue of material fact as to

AirTab's ability to establish the fourth and fifth equitable estoppel factors.  With regard to the

fourth factor, unawareness of the true facts by the party asserting the estoppel, Choina attested

that the union representatives arrived early in the morning and that:

> Mr. Thacker and Mr. Funk gave the impression that the terms of the CBA were
> consistent with the July 29, 2004 agreement.  The CBA provisiions about
> contributions were never discussed by either Mr. Thacker or Mr. Funk.

> Because the technicians and I had to get to our job sites, I did not have the
> opportunity to review the CBA or the Letter of Assent in detail before I signed
> them.  We were under considerable time pressure just to get all of the CBA
> booklets signed before the technicians and I had to leave.

Affidavit of Ron Choina ¶¶ 6,7, 8.  Thus, AirTab argues that Choina was completely unaware

that the terms of the CBA were materially different from the terms of the July letter.  However,

the Sixth Circuit has explained why this argument fails:

> In *Community Health Servs.*, the Supreme Court discussed this factor and how to
> satisfy it:

>> The truth concerning these material facts must be unknown to the
>> other party claiming the benefit of the estoppel, not only at the
>> time of the conduct which amounts to a representation or
>> concealment, but also at the time when that conduct is acted upon
>> by him.  If, at the time when he acted, such party had knowledge of
>> the truth, ***or had the means by which with reasonable diligence he
>> could acquire the knowledge so that it would be negligence on
>> his part to remain ignorant by not using those means***, he cannot
>> claim to have been misled by relying upon the representation or
>> concealment.

11

[*Heckler v.*] *Community Health Servs.*, 467 U.S. [51,] 59 n.10 [(1984)] (emphasis added); *see also Teamster's Local 348* [*Health and Welfare Fund v. Kohn Beverage Co.*], 749 F.2d [315,] 319 [(6th Cir. 1984)] (stating that, for estoppel to apply, representation must be made "to a party without knowledge of the facts ***and without the means to ascertain them***") (emphasis added).

*Gibbons*, 209 F.3d at 592-93.  Choina here, like the defendant in *Gibbons*, may not have had the knowledge of the truth of the terms of the CBA, but it is without question that he had the means by which to acquire them, *e.g.*, by reading the CBA before signing it or by requesting to sign the CBA on a day where he would have more time to review it.

"Many courts deciding contribution recovery cases have held that an employer's failure to read accessible collective bargaining agreements defeats a claim of ignorance. *Id.* at 593 (citing as examples *Audit Servs., Inc. v. Rolfson*, 641 F.2d 757, 762 (9th Cir. 1981) ("We have determined that the collective bargaining agreement unambiguously called for the payment of the contributions . . . . even if we could somehow find that the trustees intended to mislead the defendants, and nothing in the record indicates such an intent, we cannot agree that the defendants were 'ignorant' of their responsibility under the agreement.") and *Chicago Dist. Council of Carpenters Pension Fund v. Monarch Roofing Co., Inc.*, 601 F. Supp. 1112, 1117 (N.D. Ill. 1984) (holding no estoppel where defendant "had ready access to [copies of the agreements,] and thus had easy access to facts contrary to those on which it might have relied"). The failure of Choina or any representative of AirTab to read the accessible CBA and the resulting ignorance creates no basis for equitable estoppel.  *See id.* (concluding same).

As for the final factor, detrimental, justifiable reliance by the party asserting estoppel, AirTab, relying on the same attestations made by Choina above, concludes that:

Because of the circumstances under which the CBA was signed, coupled with the

> fact that Local 24's representatives failed to inform him that the terms of the CBA
> were inconsistent with the July 29, 2004 letter, Choina detrimentally and
> justifiably relied on Anderson's representations when he signed the CBA.  As
> such, the fifth element of a defense of equitable estoppel is met.

(Doc. # 113 at 15 citing Affidavit of Ron Choina ¶ 7.)  Again, however, like the fourth factor of

the equitable estoppel defense, Airtab's "estoppel defense fails because [AirTab] had knowledge

about the plans and its obligations thereunder, and did not ***reasonably*** rely on [the union

representative's] representations."  *Gibbons*, 209 F.3d at 594 (quoting *Teamster's Local 348*,

749 F.2d at 319) (emphasis added).  Indeed," '[r]eliance can seldom, if ever, be reasonable or

justifiable if it is inconsistent with the clear and unambiguous terms of plan documents available

to or furnished to the party.' "  *Id.* (quoting *Sprague v. General Motors Corp.*, 133 F.3d 388, 404

(6th Cir. 1998) (*en banc*).

Accordingly, even when viewing the evidence in the light most favorable to AirTab, the

Court concludes that no reasonable jury could return a verdict finding that each of the factors

was satisfied here, and therefore AirTab's equitable estoppel argument fails as a matter of law.

### 3.  Conclusion of delinquent contributions claims.

Based on the foregoing, the Court **GRANTS** Plaintiffs' Motion for Summary Judgment

and Intervenor Plaintiffs' Motion for Summary Judgment on their delinquent contribution claims

and **DENIES** Defendants' Motion for Summary Judgment on the same.

### B.  Breach of Fiduciary Duty

Plaintiffs and Intervenor Plaintiffs contend that Defendants Tina Hairston-Ileogben and

Pius Ileogben are fiduciaries who are personally liable for the delinquent contributions.  This

Court disagrees.

Pursuant to ERISA:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach . . . .

29 U.S.C. § 1109(a).  Further, ERISA defines a fiduciary as a person who "exercises any discretionary authority or discretionary control respecting management of such plan or any authority or control respecting the management or disposition of assets."  *Id.* at § 1002(21)(a)(i). As such, for an individual to be held liable as an ERISA fiduciary for unpaid contributions, the Court must find (1) that the unpaid contributions were plan assets and (2) that the Ileogbens exercised discretionary control or authority over such assets.

### 1. The unpaid contributions do not constitute plan assets in this particular action.

ERISA does not define when funds become "plan assets," *see, e.g., In re Luna*, 406 F.3d 1192, 1199 (10th Cir. 2005); *ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1013 (11th Cir. 2003), and the parties disagree as to whether the unpaid assets constitute plan assets.  The Sixth Circuit, however, has opined that "[t]raditionally, the 'proper rule, developed by caselaw, is that unpaid employer contributions are not assets of a fund unless the agreement between the fund and the employer specifically and clearly declares otherwise.' "  *Bd. of Trustees v. Bucci*, 493 F.3d 635, 642 (6th Cir. 2007) (citing *ITPE Pension Fund*, 334 F.3d at 1013 (footnotes omitted)).  Thus, the unpaid contributions at issue here are not plan assets unless the trust fund agreement states otherwise.

The language as issue, which has been incorporated into the CBA, is:

> The accrual date of all contributions required to be paid to the Plan by each Employer is the date upon which the hours are worked by the Employee(s).  Title to all contributions vests in the Joint Trustees on the accrual date, and all contributions are the sole property of the Joint Trustees as of the accrual date.  All Employers and all officers of Employers hold all contributions in trust for the

14

Joint Trustees of the plan from the accrual date until such time as the contributions are paid to the Trustees.

The parties disagree as to whether this language "specifically and clearly" declares whether the unpaid contributions constitute plan assets, Defendants arguing that it does not so declare. This Court agrees.

As the Sixth Circuit has explained, the language must "specifically and clearly declare" that the unpaid contributions are plan assets, for example when the language states that the trust fund "assets included 'all funds received or due to be received by the Trustees in the form of Employer Contributions (including delinquent Employer Contributions) . . . .' " *Bucci*, 493 F.3d at 642. As Defendants correctly contend, the language at issue fails to address whether the employer contributions constitute plan assets:

> The first sentence dictates that the employer's obligation to pay contributions for hours that a particular employee worked arises on the same day that the employee worked those hours, rather than at some later date. In no way does this sentence state that the contributions became plan assets on the date that the employee worked. The second sentence simply provides that on the date in which the employee worked, the Trustees acquire an ownership interest in the contributions that are to be paid for that employee. Similarly, the third sentence states that the officers of the employer are to hold the contributions for the Trustees until they are paid to the Trustees. Neither sentence states that such contributions are "plan assets" while they are still in the hands of the employer.

(Doc. # 133 at 16-17.)

Indeed, again as Defendants argue, when the above contract language is construed with other provisions in the contract, it is even more evident that the delinquent contributions do not become plan assets until they have been paid to the trustees:

> In fact, when reading these provisions in conjunction with the provisions that state that the Trustees are the fiduciaries and that they have sole discretion to manage and control the funds, it is clear that such contributions do not become plan assets until such time as the contributions are paid to the Trustees.

15

*Id.* at 17 (citing to Intervenor Funds.[4]).

Accordingly, even when viewing the evidence in the light most favorable to Plaintiffs and to Intervenor Plaintiffs, they have failed to raise a genuine issue of material fact as to whether the delinquent contributions constitute plan assets and Defendants are entitled to judgment as a matter of law on that issue.

### 2.  The Ileogbens did not exercise discretionary control or authority over the employer contributions.

Plaintiffs and Intervenor Plaintiffs argue that the Ileogbens exercised discretionary and control or authority of the contributions, as required by 29 U.S.C. § 1002(21)(a)(i), because they "decided not to pay the contributions due and owing."  (Doc. # 121 at 17.)  Defendants, however, argue that this action is not sufficient to hold the Ileogbens personally liable for the unpaid contributions.  This Court agrees.

Defendants rely on a sister district court[5] opinion:

In another case where trust funds attempted to demonstrate the individual defendants' liability as fiduciaries by relying solely on the definition of plan assets as including contribution receivables-- as Plaintiffs do here-- the district court concluded that the meaning of "plan assets" alone does not determine the individuals' liability:

But that more realistic approach to the concept of an "asset" does

_____

[4]Attached to Defendants' Motion for Summary Judgment as Exhibit E and Exhibit F. (*See* Doc. # 113.)

[5]Plaintiffs and Intervenor Plaintiffs also rely on *SW Ohio Carpenters v. E & I Constr.*, No. 1:05-cv-622, 2006 U.S. Dist. LEXIS 48715 (S.D. Ohio July 18, 2006).  That case is distinguishable because it is on a motion to dismiss and the court accepted the plaintiff's allegations in the complaint as true.  *See id.* at *7 ("Taking the allegations in the complaint as true, Defendant Baldwin allegedly exercised discretionary authority over the contributions, and, therefore, acted as a fiduciary.").

> not alone do the job for [the] Funds, because that is only the point
> of beginning for their argument.  They then seek to springboard
> from such inclusion of unpaid contributions as plan "assets"
> to the position that someone such as [the individual defendant], by
> diverting the funds that should be used to honor the contributions
> obligation, therefore becomes a plan fiduciary under 29 U.S.C. §
> 1002(21)(A).
> . . . .
>
> But such a reading is too big a stretch, for it would convert every
> contributing employer into a plan fiduciary.  This Court cannot
> credit the notion that every delinquent employer's nonpayment of a
> contribution equates to its exercising its control over the
> "disposition" of a plan's assets, so as to impose fiduciary liability
> by reason of the nonpayment.  *Chicago Dist. Council of
> Carpenters Pension Fund v. Angulo*, 150 F. Supp.2d 976, 978-79
> (N.D. Ill. 2001).

*Iron Workers' Local No. 25 Pension Fund v. Future Fence Co.*,  No. 04-73114, 2006 U.S. Dist.

LEXIS 74300, *9-11 (E.D. Mich October 12, 2006) (denying reconsideration of the "holding

that Mr. Hollowell is not personally liable as an ERISA fiduciary for Future Fence's unpaid

contributions").

Moreover, the *Future Fence* court explained that individuals cannot be held personally

liable for the unpaid contributions unless the individual was made aware of his status as a

fiduciary.  *Id.* at *8 ("a person should not be attributed fiduciary status under ERISA and held

accountable for performance of the strict responsibilities required of him in that role, if he is not

clearly aware of his status as a fiduciary").

This Court finds *Future Fence* on point and persuasive.  For the reasons given in *Future

Fence* this Court concludes the Ileogbens did not exercise discretionary control or authority over

the unpaid contributions.  Thus, even if this Court had concluded that the unpaid contributions

were to be considered plan assets, the Ileogbens would still not be personally liable for them

because they did not exercise discretionary control or authority of them as required by 29 U.S.C. § 1002(21)(a)(i).

Accordingly, even when viewing the evidence in the light most favorable to Plaintiffs and to Intervenor Plaintiffs, they have failed to raise a genuine issue of material fact as to whether the Ileogbens exercised discretionary control or authority over the unpaid contributions.

### 3.  Conclusion of fiduciary duty claims.

Based on the foregoing, the Court **GRANTS** Defendants' Motion for Summary Judgment on the fiduciary duty claims against them and **DENIES** Plaintiffs' Motion for Summary Judgment and Intervenor Plaintiffs' Motion for Summary Judgment on the same.

### C.  Breach of Trust and Conversion of Contributions

Plaintiffs move for summary judgment on their claims of breach of trust and conversion, arguing that AirTab and the Ileogbens converted the plan assets to their own use, thereby breaching Plaintiffs' trust.  However, because the Court determined that the unpaid contributions do not constitute plan assets, Defendants AirTab and the Ileogbens cannot be said to have converted any plan assets.

Accordingly, even construing the facts in the light most favorable to Plaintiffs, no jury could find in their favor.  Thus, the Court **GRANTS** Defendants' Motion for Summary Judgment on the breach of trust and conversion claims against them and **DENIES** Plaintiffs' Motion for Summary Judgment on the same.

## IV.  Conclusion

Based on the foregoing, the Court **GRANTS in part and DENIES in part** Defendants'
Motion for Summary Judgement (Doc. # 113), Plaintiffs' Motion for Summary Judgment (Doc.
# 117), and Intervenor Plaintiffs' Motion for Summary Judgment (Doc. # 121).

Specifically:

The Court **GRANTS** Defendants' Motion for Summary Judgment on the claims of the
Ileogbens' breach of fiduciary duty, breach of trust and conversion and **DENIES** Plaintiffs'
Motion for Summary Judgment and Intervenor Plaintiffs' Motion for Summary Judgment on the
same.

The Court **GRANTS** Defendants' Motion for Summary Judgment on the breach of trust
and conversion claims against them and **DENIES** Plaintiffs' Motion for Summary Judgment on
the same.

The Court **GRANTS** Plaintiffs' Motion for Summary Judgment and Intervenor Plaintiffs'
Motion for Summary Judgment against AirTab on the claims of delinquent contributions and
breach of the CBA and **DENIES** Defendants' Motion for Summary Judgment on the same.
Judgment shall be entered in favor of Plaintiffs and Intervenor Plaintiffs and against AirTAb as
to all claims for contributions for the period December 2005 through May 2006.

AirTab is **ORDERED** to file signed, accurate reports of all hours worked by sheetmetal
workers during the months of December 2005 through May 2006 within 14 days of the date of
this Opinion and Order.

The parties are **DIRECTED** to submit proposed orders containing calculations as to the
amount of the judgment to be entered in favor of Plaintiffs and Intervenor Plaintiffs within 30

19

days of the date of this Opinion and Order.  29 U.S.C § 1132(g).  In these proposals the Court should also be informed of how to distribute the $30,000.00 bond that is on deposit here.

  **IT IS SO ORDERED.**

        <u> /s/  **Gregory L. Frost**  </u>
        **GREGORY L. FROST**
        **UNITED STATES DISTRICT JUDGE**